**WILLIAM RIZZO and NISHA RIZZO, Plaintiffs**

**v.**

**M/V FOTU O SAMOA, ITS CARGO, GEAR, TACKLE, AND APPURTENANCES, and WESTERN SAMOA SHIPPING CORPORATION, Defendants**

High Court of American Samoa
Trial Division

CA No. 24-95

August 7, 1996

131

Before KRUSE, Chief Justice, LOGOAI, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel:       For Plaintiffs, Charles V. Ala`ilima
                For Defendants, Ellen A. Ryan

Opinion and Order:

This case is relatively straightforward, both as to the facts and the law. On February 13, 1995, at approximately 6:00 a.m., the defendant vessel·*M/V Fotu o Samoa*, owned by defendant Western Samoa Shipping, was docking in Pago Pago Harbor. As the ship was backing down, one of the engines continued forward, causing the ship to lose control. The cause of the accident was a frayed throttle cable for the starboard engine, which became stuck in the sheathing through which it passed. The *Fotu o Samoa* struck the *Curved Air*, a sailing vessel owned by plaintiffs William and Nisha Rizzo, which had been dry-docked for repairs. The *Curved Air* was knocked from its cinder-block supports and pushed along the shore. The port float of the *Curved Air* punctured the hull of the *Fotu o Samoa*. The *Curved Air*, along with personal property belonging to the Rizzos, was damaged.

Liability in this case is not really an issue. The *Fotu o Samoa* struck a dry-docked vessel when the throttle on its starboard engine malfunctioned due to disrepair. The agent for Western Samoa Shipping, Raymond Bancroft, effectively admitted that the throttle cables for the engines were, as a matter of course, never inspected and that they were never replaced until they had frayed so badly that they caused a malfunction, as happened here. Mr. Bancroft attempted to justify his company's policy of non-inspection or replacement by stating that it was impossible to view the cables where they passed through the sheathing. This argument is not convincing.

■■■ When a moving vessel strikes an anchored vessel, a presumption of negligence on the part of the moving vessel arises. 70 AM. JUR. 2D *Shipping* § 654 (1987). This presumption is even stronger where the moving vessel lurches onto the shore and strikes a dry-docked vessel. Furthermore,

> [p]ersons engaged in the business of navigation are bound to see that the vessel is seaworthy, well manned, and equipped for the business in which it is engaged, and whenever a collision ensues from the defective condition or unfitness of the colliding vessel for the voyage, . . . the vessel and the owner are liable.

*Id.* § 616 (footnote omitted). Failing to inspect or regularly replace a cable prone to fraying which results in navigational difficulties to a ship is negligent. In fact, such action may constitute gross negligence or willfulness, but the Rizzos have failed to prove such in this case.[1] It is no

---

[1] Where a company is·aware that fraying such as this is going to occur, resulting in navigational difficulties and possible collisions, the failure to take steps to prevent such an occurrence seems to us to be grossly negligent,

defense to say that the company normally waits until such a malfunction occurs before replacing equipment that is known to periodically fail.

■ Having disposed of the question of negligence, the primary debate in this case centered around the measure of damages:

> Damages in collision cases are estimated in the same manner as in other suits of like nature for injuries to personal property. The award should include all losses proximately resulting from the collision, the general rule being that the owner of the vessel is to be placed in the same position he would have occupied had the disaster not occurred. Although the injured party may be entitled to full indemnity, the respondents are not, as a rule, liable for such damages as might have been reasonably avoided by the exercise of ordinary skill and diligence, after the collision on the part of those in charge of the injured ship.

> Where repairs are practicable, the measure of damages is the cost of restoring the injured vessel to the condition in which it was at the time of the collision . . . .

*Id.* § 656, at 871. The *Curved Air* is a high-tech trimaran sailing vessel. It uses numerous high-tech composite materials in place of more standard materials. These materials are lightweight and extremely strong. They are also far more expensive than standard materials, both in terms of material cost and in terms of the increased skilled labor required to build with them.

We have a plethora of estimates for the repair of the boat and other damages before us. First, we have the preliminary claim sent by Mr. Rizzo to Western Samoa Shipping about two weeks after the accident. The total estimate is $45,985, broken down as follows:

| | |
|---|---|
| Materials to repair boat: | $ 9,935 |
| Labor to repair boat: at $ 50/ hour[2] | $ 30,250 (605 hours |

---

reckless or willful. However, in order to so find, we require evidence of the standard of care in the industry, the number of accidents which occur from throttle cables fraying, the cost of replacement, etc. The Rizzos have presented no such evidence, and thus we cannot find gross negligence or more.

[2] This report only includes labor times, without an hourly rate. We have

| Labor & crane to relocate boat: | $ 800 |
| Shelter: | $ 5,000 |
| Other personal property: | n/a |

Second, we have a damage assessment prepared by Mr. Rizzo, apparently around November or December 1995. This report is structured much the same as the first Rizzo report, but does not list all of the materials listed in the first report. Some of the prices have also been changed, mostly lowered. The labor estimates are all greatly reduced. The total estimate equals $39,642. This report gives the following figures:

| Materials to repair boat: | $ 5,782 |
| Labor to repair boat: at $ 50/ hour) | $ 19,750 (395 hours |
| Labor & crane rental to relocate boat: | $ 800 |
| New shelter: | $ 2,500 |
| Other personal property: | $ 10,810 |

Mr. Rizzo appears to know more about composite materials and composite construction than any other witness. Unfortunately, he is an interested party, and his ability to function as an expert witness is questionable. We assume that the first estimate is higher than the second because it constituted an "offer" to the defendants to settle the case.[3]

Third, we have an estimate prepared at the request of the Rizzos by Lewis Tung and Lawrence Goodson. Mr. Tung, who testified at trial, has extensive experience with composite materials and construction. Unfortunately, he has limited experience with marine surveying and is not a licensed surveyor. The Tung/Goodson report's material estimates match the first Rizzo report almost exactly. Their labor estimates are even higher than that of the first Rizzo report. The Tung/Goodson's report provides a total damage estimate of $61,585:

| Materials to repair boat: | $ 9,925[4] |
| Labor to repair boat: at $ 50/ hour) | $ 37,500 (750 hours |

---

assumed a $50 per hour rate for Mr. Rizzo's labor.

[3] We are aware that parties to a lawsuit often inflate estimates when communicating to achieve a better "bargaining position."

[4] We have not corrected the mathematical errors in this report, but have simply totaled the material subtotals provided.

| | |
|---|---|
| Labor & crane rental to relocate boat: | n/a |
| New shelter: | n/a |
| Other personal property: | $ 14,160 |

This report seems to be largely a copy of the first Rizzo report, which is of questionable value, as discussed above.

Fourth, we have a report prepared by Michael Spencer of Westside Shipping at the Rizzo's request. This report is very brief, and is not broken down into components like the others. We have numerous problems with this report, and question its impartiality. Among other things, the report is of hearsay value and there is a possible conflict of interest for Westside Shipping. This report makes no mention of composite materials or construction. The total estimate is $12,895. It contains the following partial estimates:

| | |
|---|---|
| Materials to repair boat: | $ 2,725 |
| Labor to repair boat: | $ 9,520 (272 hours at $ 35/ hour) |
| Labor & crane rental to relocate boat: | n/a |
| New shelter: | n/a |
| Other personal property: | n/a |
| Outside labor: | $ 750 |

Fifth, we have a report prepared by Wickham Marine at the request of the defendants. Mr. Wickham has a great deal of experience in marine surveying, but very little experience with composite materials. His report contradicts the other reports by stating that there is little or no composite construction and that the boat contains foam, which it does not. His labor factor does not reflect the local market and he does not include estimates for composite materials. For these reasons, we attribute little value to his report. He gives a total estimate range of $7,304.37 to $8,612. The higher amount is broken down as follows:

Materials to repair boat: $3,482
Labor to repair boat: $5,940 (270 hours at $22/hour)
Labor & crane rental to relocate boat: $400
New shelter: n/a
Other personal property: n/a

Sixth, we have a report prepared by Maselino Ioane at the request of the defendants. Ioane is a shipbuilder currently residing in American Samoa with considerable boat building experience. However, his experience with composites seemed to be very limited, and the epoxies listed in his report do not seem to be suitable matches for the composites he listed. According to his own testimony, he spent a very short time examining the boat. Ioane

136

was not a convincing expert witness. Of considerable note to us, however, is the fact that Ioane lists his labor rate at $50/hour, the same as Rizzo's. Ioane's total estimated price is $8,550, parsed as follows:

> Materials to repair boat: $4,100
> Labor to repair boat: $4,750 (95 hours at $50/hour)
> Labor & crane rental to relocate boat: n/a
> New shelter: n/a
> Other personal property: n/a

Thus we have six estimates supposedly prepared by six expert witnesses.[5] Of these six, the most experienced expert in the type of composite construction with which we are dealing is Mr. Rizzo. He is, however, a party to this action and his testimony is, therefore, troublesome.[6] The second most competent witness in the field of composite construction, Mr. Tung, is not a certified surveyor, and seems to have primarily parroted one of Rizzo's reports.[7] The Ioane, Wickham, and Spencer reports are simply inapplicable--they deal with the wrong materials and construction techniques for this boat, and thus are of little help in assessing damages.

■ We are not required to assess damages with mathematical precision, though we strive to be as accurate as possible. *See Cunningham v. City of Overland*, 804 F.2d 1066, 1070 (8th Cir. 1986). In striving to come to an accurate determination of damages to the boat, we feel we must also discuss the damage estimates for the personal property.

---

[5] Two of the reports were prepared by Mr. Rizzo, while one was prepared by two people--Tung and Goodson.

[6] We have further reason to believe that the Rizzos may have inflated the estimate for the boat repair because their other estimate for personal property damage is substantially inflated. *See infra.*

[7] The defendants went to great length at trial to show how the Tung/Goodson report was similar to the preliminary report sent by Rizzo to Western Samoa Shipping. We note that the two reports are not identical, but are similar. This does not, however, mean either that there was collusion or that the reports have no value. It is quite likely that Tung and Goodson, the only experts besides Rizzo who seem competent to assess damages to composite construction, could have substantially agreed with Mr. Rizzo's assessment and provided the same or similar numbers. This is particularly true where we are dealing with materials which only have one or a very few suppliers, and where there is only one competent builder in the territory, meaning that prices are fixed.

The Rizzos have submitted a list of 21 personal property items for which they are seeking compensation.[8]  The prices on this list seem highly inflated to us. For instance, they have valued their 1972 Ford van at $2,500. There was extensive testimony, however, as to the dilapidated condition of this van. It is questionable whether it even ran before the accident. From our examination of the photographic exhibits and testimony, we believe its value to be closer to $200 - $300. They value a damaged container at $1,000, the price that they paid for it. From our assessment of the evidence, there is little or no damage to this container. Furniture damage was estimated at $1,500, a price that we find far too high. In all, we believe that the nearly $11,000 personal property claim made by the Rizzos is probably worth about $2,000 - $3,000.

■  We have more skill, as laymen, in assessing the value of the Rizzos' personal property than we do in assessing the damage to a high-tech sailing vessel. While Mr. Rizzo was the most convincing expert regarding this type of construction, we are left with doubt about his veracity in making estimates for the boat's repair. While we do not think that he inflated the boat repair estimates as much as those for the personal property, we are convinced that there was some inflation. Troubling to us is the fact that the Rizzos submitted no supporting receipts whatsoever. According to Mr. Rizzo's testimony, the damage suffered by the *Curved Air* in the collision is very similar to damage suffered by the boat during Hurricane Ofa. He has been repairing that damage for the past few years, yet he produced no receipts for the materials he purchased, and no estimates of the time he spent in making these repairs. He did not even produce a receipt for the crane, which he has already rented to relocate the vessel.

Additionally, Mr. Rizzo has consistently priced all labor at the rate he charges for shipbuilding and repair--$50 per hour.  This price was confirmed by Ioane as a fair price for shipbuilding by someone of Mr. Rizzo's experience. However, this does not make it a fair rate for such things as clean up or relocating a ship. Even if Mr. Rizzo does this work himself, and even if he could prove, which he has not, that he is missing time from shipbuilding that would otherwise be compensated, he does not receive a shipbuilder's salary for work that is not shipbuilding.

Having said all of this, we believe the most accurate basis for estimating damages to be Mr. Rizzo's second report, estimating ship repair costs at $5,782 for materials, $19,750 for labor, and $800 for relocation--a total of

---

[8] Calling this list "personal property" is not wholly accurate, since it also includes labor for clean up.

$26,332. For the reasons listed above, we believe this estimate is inflated, and thus award $22,000 in total for ship repair. We award an additional $3,000 for other property damage including the claimed damage to the shelter.

Judgment will accordingly enter in favor of the plaintiffs and against the defendants in the amount of $25,000.

It is so ordered.